Soott, C. J.
The record brought under review in this case discloses the following facts:
In April, 1862, Samuel Smith, then being sheriff of Mahoning county, in virtue of an order of attachment, which had properly come into his hands, levied on certain goods and chattels at the suit of defendants in error, as the property of one Catlett Jones, of which property so attached the plaintiff in error claimed to be the owner.
The said sheriff thereupon, at his own instance, gave notice, in writing, to a justice of the peace of the county, that said goods had been taken by him on an order of attachment, issued from the court of common pleas of said county, at the suit of Wilson Carr & Co. against Catlett Jones; that L. M. Jones claimed the ownership of said goods ; and that he, said sheriff, for Ms own protection, and without the request of said claimant, desired a trial of the right of property in the premises.
The justice appointed a day for the trial, and issued a venire for five jurors to try the right of the claimant to the property.
On the day set for the trial, the plaintiff in error appeared only for the purpose of denying that he ever authorized or requested *384 *the proceeding to bo instituted; he declined to engage in the trial; refused to give or prove notice to defendants in error of the time and place of trial; and asked that the proceedings be dismissed, and that his name be stricken therefrom as a party. The justice overruled his motion, and held that the trial should proceed. The claimant declined to prosecute his alleged claim, or to appear further in the case.
Thereupon the jury was impaneled and sworn, and the defendants in error, waiving the want of notice, proceeded to have their witnesses sworn and examined. The jury, by their verdict, found that the claimant had no just right to any part of the property specified in the schedule filed with the justice by the sheriff, and the justice thereupon rendered judgment against the plaintiff in error, and in favor of the defendants in error, for costs, taxed at nineteen dollars and twelve cents.
On proceedings in error, thereupon instituted by the claimant, the court of common pleas of said county affirmed this judgment of the justice; and the district court subsequently affirmed the judgment of the court of commou pleas.
The plaintiff here seeks the reversal of these several judgments, on the ground that the justice of the peace acted without jurisdiction in instituting proceedings for the trial of the right of property, at the sole instance of the sheriff, and for his protection, and without the request or consent of the claimant; and in proceeding, against the will of the claimant, to try his right to the property claimed, and in rendering judgment against him.
The question thus raised is, whether one claiming to be the owner of property, which has been taken by an officer under an order of attachment issued against another, can be required, against his will, to submit his claim to adjudication in the summary mode prescribed in sections 426 and 427 of the code.
By the 224th section of the code it is provided, that “ If personal property which has been attached be claimed by any person other than the defendant, it shall be the duty of the officer to have the validity of such claim tried; and such proceeding must be had thereon with the like effect as in case *the property had been seized upon execution and claimed by a third person.”
The mode and effect of a trial of the claimant’s right, when the property has been taken on execution, are prescribed in sections 426, 427, and 428 of the code, which direct, in substance, that if the *385 officer, by virtue of any writ of execution issued from any court of record in this state, shall levy the same on any goods and chattels-claimed by any person other than the defendant, it shall be the-duty of said officer forthwith to give notice in writing to some justice of the peace of the county, in which shall be set forth the names of the plaintiff and defendant, together with the name of the claimant ; and at the same time to furnish the justice with a schedule of the property claimed. It is made the duty of the justice, on the receipt of such notice and schedule, immediately to enter the same on his docket, and issue a writ of summons for five disinterested men having the qualifications of electors, requiring them to appear' before him, at the time and place named in the writ, to serve as a, jury in the trial of the claimant’s right to the property in controversy; and the time fixed for the trial must not be more than three-days after the date of the writ. It is made the duty of the claimant to give two days’ notice, in writing, to the plaintiff or other party for whose benefit the execution was issued and levied, of the time and place of trial; and he is also required to prove, to the satisfaction of the justice, that such notice was given. The jury is to-be sworn to try the right of the claimant to the property in controversy, and if they find, from the evidence, that the right to the property, or any part thereof, is in the claimant, they are required also to find the value thereof; and the justice is thereupon to render judgment upon such finding of the jury, for the claimant, that, he recover his costs, and that he have restitution of the goods according to the finding of the jury. But if the right to said goods, and every part thereof, is not found by the jury to be in the claimant, then the justice is required to render judgment on such finding, in favor of the party for whose benefit the execution issued, and against said claimant for costs, and to award execution thereon. Such judgment for the claimant *is declared to be a justification of the officer in returning “ no goods ” to the writ of execution, by virtue of which the levy was made, as to such part of the goods as were found to belong to the claimant, unless within three days after such trial the plaintiff in execution shall tender to-the sheriff, or other officer having such property in his custody on execution, an undertaking, with good and sufficient sureties, payable to such claimant, in double the amount of the value of such property as assessed by the jury, to the effect that they will pay all damages sustained by reason of the detention or sale of such prop *386 ■erty; in which case the officer having the execution is required to deliver such undertaking to the claimant, and proceed to sell such property as if no such trial of the right of property had taken place, and shall not be liable to the claimant therefor.
Under these provisions of the statute, the result of a trial of the claimant’s right to property levied on in execution, whatever be the finding of the jury and the judgment of the justice, is or may be to conclude the claimant from all right of redress against the officer making the levy.
For, if the finding of the jury be against the claimant, then, as was held under the similar statute of 1831, in Patty v. Mansfield, 8 Ohio, 369, he can not afterward maintain an action against the officer. If the verdict of the jury be in favor of the claimant, then the plaintiff in execution may tender the undertaking provided for by the statute, and require the sale • to proceed; and the officer is not liable to the claimant therefor. Such are the plain terms of the statute, and so it was held in Ealston v. Ousler, 12 Ohio St. 105.
Now, where an officer having an execution against the goods of A, wrongfully levies it upon the goods of B, was it intended by the legislature that B should be compelled, at the mere will of the officer, to submit his claim of ownership to trial by a jury of five men, from whose verdict, and the judgment rendered thereon, there can be no'appeal; and that, whether the finding of the jury .■and the judgment of the justice be against the claimant or in his favor, his property may still be wrongfully sold by the officer with entire impunity? It is the boast of the common law, that wherever *there is a wrong there is a remedy; and it is the dictate of justice that the wrong-doer should be liable to make reparation. The constitution provides that “ all courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law.” Bill of Eights, -sec. 16. It also declares that “the right of trial by jury shall be inviolate.” Bill of Eights, sec. 5. And that by this is meant a jury of twelve men, as at common law, has been long since settled. We do not see how such legislation could be reconciled with these •constitutional guaranties.
In several cases which have come before this court and its predecessors under the former constitution, and which involved a construction of the statute now under, consideration, or of prior statutes containing substantially the same provisions, the objection *387 -that the immunity given to the officer, as the result of this summary proceeding (which concludes the rights of none of the parties in other respects), is inconsistent with the constitutional rights of the claimant, has been repeatedly considered, and has never received but one answer. That answer has invariably been that in such a trial of the right of property, the claimant was a voluntary actor; and that having chosen to avail himself of this summary .and cumulative remedy, instead of resorting at once to his common-law remedy, he has no right to complain if he is subjected to all the •conditions upon which the statute affords the remedy which he has ■chosen.
Thus, in Patty v. Mansfield, supra, it was said by Judge Hitchcock, delivering the opinion of the court: “No person is bound to claim his property under this statute. He may at once commence his action'at common law against the sheriff or other officer; and if he prefer the statutory remedy he ought to be concluded by it, so far at least as the officer is concerned.”
In Abbey v. Searls & Rider, 4 Ohio St. 598, it was said by Thurman, C. J.: “ The claimant is not bound to have a trial of the right of property, and if he nevertheless see fit to have it, and fail to establish his right, thereby adding apparent strength to the claim of the creditor, that the property *be held by the process, he ought not to be allowed, in a subsequent proceeding against the officer, to show his right to it.”
And in Ralston v. Ousler, supra, Judge Peck, delivering the opinion of the court, says: “ The claimant having in this instance voluntarily availed himself of the statutory remedy, instead of resorting, as he might have done, to the remedies left open to him by the common law, must be regarded as having elected to, take this peculiar remedy, with all its statutory incidents, and can not now, so far at least as the sheriff is concerned, complain of its infringement of his constitutional rights.”
But, in the case before us, no such answer can be given to the-constitutional objection; for here this statutory remedy was resorted to by the officer, against the will of the claimant, who declined to adopt it, refused to give notice to the plaintiffs in execution, or to participate in the proceeding, otherwise than by protesting against and disavowing it in every possible way.
If the construction given to the statute in this case by the courts below be the proper one, we can not but think that the plaintiff in *388 error has grave reason to object that the statute contravenes hi& rights under the constitution. To such objection we would be unable to find an answer satisfactory to our own minds.
But the statute is not to be so construed as to render its provisions inconsistent with the constitution, and therefore null and void, unless its terms are plainly and clearly such as can not reasonably be construed so as to harmonize with that instrument. And such, we-think, is not the case with the enactment in question.
To us it seems clear that the legislature did not intend that this summary remedy should be resorted to by parties other than the claimant, and against his will. Indeed, we think the fair import of the language of the statute is clearly otherwise. The terms of the act give no option to the officer who has made the levy as to whether such a proceeding shall be instituted or not. On the contrary, all his-agency in the proceeding is in discharge of official duties imposed upon *him. “It shall be his duty forthwith to give notice in-, writing to some justice of the peace,” is the language of the act. Nor is he even a nominal party to the proceeding, nor can any judgment be rendered for or against him. As to him, it is res inter alois acta, though it may result in affording him protection. On the other hand, the statute clearly regards the claimant as the actor' throughout the proceeding. As such, it is made his duty to give notice in writing to the plaintiff in execution of the time and place of trial; and no trial of his right to the property can be had unless he-first proves to the satisfaction of the justice that such notice was given. If the proceeding may be instituted by the sheriff, on his-own motion, why should he not have been required to give notice-of the time and place of trial, both to the plaintiff in execution- and the claimant ? If in this case the execution creditors had refused to waive the want of proper notice, could the trial have proceeded for the benefit of the sheriff? If not, then his protection, must have failed. And it might well be questioned whether the-plaintiff in execution would be bound to act upon or regard a notice of the contemplated trial not having the sanction of the claimant, nor purporting to emanate from him.
A similar provision is made by another statute, for the trial off the right of property taken by a constable, under process of attachment or execution issued by a justice of the peace.
The 48th section of the act relating to the civil jurisdiction of justices of the peace, is as follows: “ If any of the property which* *389 shas been attached be claimed by any person other than the defendant, the claimant may have the validity of such claim tried, and such proceedings must be had thereon, with like effect as in case the' property had been seized upon execution issued by the justice and -claimed by a third person.” Here the right to institute such a trial is expressly given to the claimant, and to the claimant only. And a reference to sections 101, 102, and 103, of the same act, will show that in case of property levied on by a constable under an execution of attachment, and claimed by a stranger to the process, the -constable has nothing to do with the trial of the claimant’s right thereto. He may know nothing of it till after its conclusion ; *when, if the claimant establish his right, the justice must order the restitution of the property to the claimant. And yet by the terms of that act, the same protection against liability is secured to the constable by a finding and judgment on the trial adverse to the claimant. And this protection to the constable was said in Armstrong v. Harvey (11 Ohio St. 532), to be the main object of the enactment. Yet it is clear that such protection can only be obtained where the claimant elects to submit his rights to such adjudication.
This statute and the code were enacted within three days of each ■other, and if the policy or purpose of the one were at all doubtful, the light which is reflected thereon by the plain terms of the other, in pari materia, is not to be disregarded.
"We hold that the legislative intent was to provide for the case of -a claim made with reference to the statute, or accompanied with a demand of the remedy given by the statute, and that, in this case, •the justice of the peace had no jurisdiction to try the right of the •plaintiff in error to the property in question, against his consent, and at the instance of the sheriff alone, nor to render judgment against him in the premises.
The several judgments of the district court, of the court of common pleas, and of the justice, will therefore be reversed.
Dat, White, Welch, and Brinkerhoee, JJ., concurred.